CLEVELAND POLICE PATROLMEN'S ASSOCIATION, Appellant,

v.

CITY OF CLEVELAND, Appellee, et al.

[Cite as *Cleveland Police Patrolmen's Assn. v. Cleveland* (1997), 118 Ohio App.3d 584.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70380.

Decided March 17, 1997.

*Marshall & D'Angelo* and *Patrick A. D'Angelo*, for appellant.

*Duvin, Cahn & Hutton, Frank W. Buck* and *Robert M. Wolff*, for appellee.

---

O'DONNELL, Judge.

The Cleveland Police Patrolmen's Association ("CPPA") appeals from a judgment of the common pleas court that denied its requests for declaratory judgment and injunctive relief and instead determined that institutional guards whose only duty is the transport of prisoners are not "peace officers" and are therefore not required to be certified under R.C. 109.77.

The matter arose from continuing implementation of the "civilianization" plan of the city of Cleveland designed to cause more police officers to be assigned to street patrol.

In August 1994, the city initiated its plan when it transferred various clerical duties formerly performed by police officers to civilian employees. Next, the city hired "institutional guards" whose duties consisted primarily of supervising prisoners at the central jail and at district correctional facilities. The state of Ohio certified these institutional guards as jailers.

Now the city has selected twenty-two of these institutional guards, has added some additional training, authorized them to carry firearms, and seeks to have them transport prisoners primarily from district police stations to the central jail.

The instant matter arose when the appellant, CPPA, sought a judicial declaration that these institutional guards were peace officers and an injunction to prevent implementation of the city's prisoner transportation plan utilizing these institutional guards. This transport duty had routinely been performed by patrol officers.

The trial court held a combined hearing on both the requests for declaratory judgment and injunctive relief but declined to grant either, concluding that "as long as the guards stay within the confines of their present duties, no certification as a peace officer is required."

From that decision, the CPPA has appealed and raised two assignments of error. The first states:

"The trial court committed prejudicial error in determining that the armed transportation of prisoners is not a function preserving the peace and enforcing the laws and that an institutional guard is not required to be certified under R.C. 109.77."

Appellant CPPA urges that the court erred in its ruling because the transportation of prisoners and/or convicted felons is a function which preserves the peace and enforces laws, and is, therefore, a function of a peace officer who must be certified in accordance with R.C. 109.77.

The city, however, contends that institutional guards are not "peace officers" as that term is defined in R.C. 109.71, and therefore do not need to be certified in accordance with R.C. 109.77.

The single issue then, presented for consideration in this appeal, is whether armed, uniformed officers hired by the city of Cleveland to transport prisoners are peace officers required to be certified in accordance with the requirements of R.C. 109.77.

The term "peace officer" is defined in R.C. 2935.01, for purposes there described, to include a "member of the organized police department of any municipal corporation." It is also defined in R.C. 109.71(A), which reads:

"(A) 'Peace officer' means:

"(1) A deputy sheriff, marshall, deputy marshall, member of the organized police department of a township or municipal corporation, member of a township police district or joint township police district police force, member of a police force employed by a metropolitan housing authority under division (D) of section 3735.31 of the Revised Code, or township constable, who is commissioned and employed as a peace officer by a political subdivision of this state or by a metropolitan housing authority, and whose primary duties are to preserve the peace, to protect life and property, and to enforce the laws of this state, ordinances of a municipal corporation, resolutions of a township, or regulations of a board of county commissioners or board of township trustees, or any such laws, ordinances, resolutions, or regulations."

The city further maintains that an individual cannot be found to be a peace officer unless all three criteria are satisfied and that since the institutional guards do not and will not "enforce the laws," they cannot be deemed "peace officers."

This position is also confirmed in *Dektas v. Leis* (1989), 64 Ohio App.3d 450, 581 N.E.2d 1150, where the court stated at 452, 581 N.E.2d at 1151:

"In order for a person to be a peace officer under R.C. 109.71(A)(1), three criteria must be met. First, the person must be appointed to one of the specific positions enumerated in the statute. Second, the person must be commissioned or employed as a peace officer by a political subdivision of this state. Third, the person's primary duties must be to preserve the peace, to protect life and property, and to enforce laws, ordinances, or regulations. See *State v. Giallombardo* (1986), 29 Ohio App.3d 279, 29 OBR 343, 504 N.E.2d 1202; 1984 Ohio Atty.Gen.Ops. No. 84–008."

The court in that case determined that deputy sheriffs hired as corrections officers were not peace officers eligible for peace officer training, and that training requirements for their positions as corrections officers under Ohio Adm.Code 5120:1–8–18 were significantly different from those required of peace officers under Ohio Adm.Code Chapter 109:2–1.

Here, these institutional guards have already been certified as jailers, much like the corrections officers who deal with prisoners in a confined environment. However, now the city contemplates equipping them with firearms and giving them additional training, and having them involved in the transportation of prisoners on the open highways and roadways of the community where numerous possibilities exist for contact with the general public. Since no section of the Ohio Administrative Code is specifically tailored to provide training for such a position, the appellant sought a declaratory judgment to classify these individuals as peace officers, which is now the issue before this court.

In *State v. Glenn* (1986), 28 Ohio St.3d 451, 28 OBR 501, 504 N.E.2d 701, the Ohio Supreme Court determined that a volunteer reserve duty sheriff, John Litch, Jr., who was killed while transporting a prisoner, was a "peace officer" as that term is utilized in R.C. 2929.04(A)(6). That statute sets forth one of the criteria for imposing the death penalty for a capital offense. The court stated at 453–454, 28 OBR at 502–503, 504 N.E.2d at 704–706:

"R.C. 2935.01(B) defines 'peace officer' to include 'a sheriff, deputy sheriff, marshall, deputy marshall, member of the organized police department of any municipal corporation, state university law enforcement officer appointed under section 3345.04 of the Revised Code, a police constable of any township * * *.' Deputy sheriffs are to be appointed by the sheriff pursuant to R.C. 311.04. Also, a deputy sheriff is a peace officer when he is 'commissioned and employed as a peace officer by a political subdivision of this state, and whose primary duties are to preserve the peace, to protect life and property, and to enforce the laws of Ohio * * *.' R.C. 109.71.

"It is uncontroverted that the victim fulfilled all the above requirements and that he was duly appointed and was in the process of activities performed pursuant to his duties to enforce Ohio's laws. While transporting the prisoner,

the victim was in full uniform and driving a sheriff's squad car. Although he served without remuneration, his responsibilities and training requirements were the same as those of a full-time deputy. He was, in every sense, one of those 'public servants who regularly must risk their lives in order to guard the safety of other persons * * *.' *Roberts v. Louisiana* (1977), 431 U.S. 633, 636, 97 S.Ct. 1993, 1995, 52 L.Ed.2d 637, 641. Acting to preserve the peace of his community, John Litch nobly made the supreme sacrifice of his life. We therefore conclude that one who acts as a reserve or special deputy sheriff is a peace officer as that term is utilized in R.C. 2929.04(A)(6) and 109.71. * * *."

The trial court's conclusion in this case that those engaged in the transportation of prisoners "will not be performing any enforcement [of] laws" appears to conflict with the Ohio Supreme Court's conclusion in *Glenn, supra,* that at the time he was killed, Officer Litch "was in the process of activities performed pursuant to his duties to enforce Ohio's laws." So too are institutional guards who perform the same duty as Officer Litch.

We conclude that the function of transporting a prisoner in a marked police vehicle by uniformed armed officers can only be regarded as a duty of enforcing laws; we further recognize that these individuals will not perform other police duties such as traffic enforcement, fingerprint identification, or homicide investigation. This does not dissuade us from the conclusion that the function of transporting prisoners on the public highways among the general public is primarily a law enforcement duty with its attendant problems and concerns, including potential hostage, kidnap, escape or riot situations; medical emergencies, including stroke, seizure, and conditions requiring administration of CPR; necessity for training in the conduct of body and automobile searches; the use of force, including deadly force; and the protection and enforcement of the civil rights of the public and those being transported—all of which are directly related to preserving the peace, protecting life and property, and enforcing the law.

Accordingly, the declaration of the trial court is vacated and set aside based upon our conclusions that the duty of transporting prisoners involves preserving the peace, protecting life and property, and enforcing laws. Therefore, institutional guards whose primary duty involves such transportation are peace officers as defined in R.C. 2935.01 and 109.71, and they are required to be certified in accordance with R.C. 109.77.

"The trial court abused its discretion when it denied injunctive relief based upon its determination there exists no evidence of irreparable harm."

Our disposition of the first assignment of error renders this assignment moot, and in accord with the Appellate Rules we need not decide or rule upon it.

*Judgment reversed.*

KARPINSKI, J., concurs.

NAHRA, P.J., dissents.

NAHRA, Presiding Judge, dissenting.

In this appeal, the Cleveland Police Patrolmen's Association asks this court to declare that only persons certified as peace officers in accord with R.C. 109.77 are permitted to transport prisoners within the city of Cleveland. Because both statutory and case law impose no such requirement and because there is a long history of corrections officers transporting prisoners throughout Ohio, I respectfully dissent from the majority's opinion.

The majority relies on the holding of *State v. Glenn* (1986), 28 Ohio St.3d 451, 28 OBR 501, 504 N.E.2d 701, to find that the transportation of prisoners must be done by certified peace officers. However, *Glenn* is inapposite to the resolution of this matter. A peace officer is defined in R.C. 109.71(A)(1), which has been interpreted to require three criteria:

"First, the person must be appointed to one of the specific positions enumerated in the statute. Second, the person must be commissioned or employed as a peace officer by a political subdivision of this state. Third, the person's primary duties must be to preserve the peace, to protect life and property, and to enforce laws, ordinances or regulations." *Dektas v. Leis* (1989), 64 Ohio App.3d 450, 452, 581 N.E.2d 1150, 1151, citing *State v. Giallombardo* (1986), 29 Ohio App.3d 279, 29 OBR 343, 504 N.E.2d 1202.

In *Glenn, supra,* John Litch, Jr., a volunteer reserve deputy sheriff, was killed while transporting a prisoner. The issue decided by the court was whether the murder of this deputy sheriff constituted the homicide of a peace officer pursuant to R.C. 2929.04. After citing R.C. 109.71, the *Glenn* court concluded:

"It is uncontroverted that the victim fulfilled all the above requirements and that he was duly appointed and was in the process of activities performed pursuant to his duties to enforce Ohio's laws.

"* * *

"We therefore conclude that one who acts as a reserve or special deputy sheriff is a peace officer as that term is utilized in R.C. 2929.04(A)(6) and 109.71." (Citations omitted.) 28 Ohio St.3d at 453–454, 28 OBR at 503, 504 N.E.2d at 705.

*Glenn* supports the proposition stated in *Dektas,* that there are three criteria a person needs to meet before being declared a peace officer. However, the instant majority opinion extrapolates from *Glenn* the opposite proposition, that it is only necessary to fulfill one of the requirements enumerated in R.C. 109.71 to be declared a peace officer. This is not what the *Glenn* court held. It held that

Litch "fulfilled *all the requirements* " of R.C. 109.71 and was therefore a peace officer. (Emphasis added.) *Id.* at 453, 28 OBR at 502–503, 504 N.E.2d at 705.

Additionally, Ohio's correctional officers have a long history of transporting prisoners. The Ohio Administrative Code requires that Ohio's correctional officers be trained in the transportation of prisoners and in the use of firearms. See Ohio Adm.Code 5120:1–8–18(D). It does not require that the correctional officers be certified as peace officers to perform their duties.

For these reasons, I would affirm the trial court's determination that the institutional guards need not be certified as peace officers in order to transport prisoners within the city of Cleveland.